| | | | |
|---|---|---|---|
| | AUSA: | Kathryn Boyles | Telephone: (313) 226-9556 |
| AO 91 (Rev. 11/11)  Criminal Complaint | Agent: | Nathaniel Y. Han | Telephone: (734) 995-1310 |

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

United States of America
v.
Jacob Nathaniel LEN

Case No.

Case: 2:25−mj−30487
Assigned To : Unassigned
Assign. Date : 8/1/2025
Description: RE: SEALED MATTER
(EOB)

**CRIMINAL COMPLAINT**

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___July 7, 2025___ in the county of ___Oakland___ in the ___Eastern___ District of ___Michigan___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, Sections 111(a)(1), (b) | Assaulting, resisting or impeding certain officers or employees |

This criminal complaint is based on these facts:

On or about July 7, 2025, in the Eastern District of Michigan, Southern Division, Jacob Nathaniel LEN did forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in Title 18, United States Code, Section 1114, that is, United States Border Patrol Agents, who were engaged in official duties using a dangerous weapon, that is, a vehicle, all in violation of Title 18, United States Code, Sections 111(a)(1) and (b).

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Nathaniel Y. Han, Special Agent - FBI
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: ___August 1, 2025___

_____
*Judge's signature*

City and state: ___Detroit, MI___          David R. Grand, U.S. Magistrate Judge
                                            *Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Nathaniel Y. Han, declare the following under penalty of perjury:

## INTRODUCTION

1. This affidavit is submitted in support of a criminal complaint charging Jacob Nathaniel LEN with forcibly resisting, opposing, impeding, intimidating, or interfering with any person designated in Title 18, United States Code, Section 1114, that is, United States Border Patrol Agents, who were engaged in official duties, using a dangerous weapon, that is, his vehicle, all in violation of Title 18, United States Code, Sections 111(a)(1) and (b).

2. I have been employed by the Federal Bureau of Investigation (FBI) as a Special Agent since 2016. I currently work as a coordinator of a Violent Crime Task Force in the Ann Arbor Resident Agency of the Detroit Field Office. I have been involved in investigating violent crime, drug trafficking, human trafficking, and foreign counterintelligence. As an FBI Special Agent, I am authorized to investigate violations of the laws of the United States, and I am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

3. I make this affidavit based on my participation in this investigation, as well as information received from other law enforcement officials and/or their reports and records. The information outlined herein is provided for the limited purpose of establishing probable cause and does not contain all information known to law enforcement pertaining to this investigation.

## PROBABLE CAUSE

4. On July 7, 2025, four United States Border Patrol Agents - three from the Gibraltar Border Patrol Station and one from the Detroit Border Patrol Station – were assigned to transport fifteen illegal aliens detained on violations of immigration law from the Gibraltar Border Patrol Station to the North Lake Correctional Facility in Baldwin, Michigan. All Border Patrol Agents are persons designated in Title 18, United States Code, Section 1114.

5. The Border Patrol Agents planned to drive the immigrant detainees in two marked Border Patrol service vehicles, a Ford Transit 350 transport van and a Ford Explorer Police Interceptor.

6. Both government service vehicles were white in color decorated with green decals and the words "Border Patrol" located on both side panels and the rear of the vehicle. Both government service vehicles were equipped with emergency lights and sirens. The vehicles also had blue decals with the words "U.S. Customs and Border Protection" along with a blue and red Department of Homeland Security seal on the front driver's and passenger's side doors. The vehicles also had decals with the words "Honor First," which is the motto of the United States Border Patrol, on the front driver's side and passenger's side doors.

7. All four Border Patrol Agents were wearing authorized United States Border Patrol uniforms with a United States Border Patrol agent badge on the chest, the United States Border Patrol patch on one shoulder and the Department of Homeland Security patch on the other shoulder.

8. At approximately 5:00 p.m., the Border Patrol Agents departed the Gibraltar Border Patrol Station, with two agents and twelve immigrant detainees in the Ford Transit 350 transport van and two agents and three immigrant detainees in the Ford Explorer Police Interceptor.

9. At approximately 6:00 p.m., the marked Border Patrol vehicles were traveling westbound in the center lane on I-96 near the Kensington Road exit, in the Eastern District of Michigan, with the Ford Transit 350 transport van in front and the Ford Explorer Police Interceptor following behind, driving approximately 70 miles per hour.

10. The Border Patrol Agents in the Ford Explorer noticed a black BMW sedan driving by their vehicle from the left passing lane. As the vehicle approached, the male driver and sole occupant of the vehicle, raised his hand to stick up his middle finger at the agents.

11. The Border Patrol Agent driving the transport van also noticed the black BMW sedan in his driver's side mirror quickly approaching in the left passing lane. The Border Patrol Agent did not observe any other vehicles near his transport van in the center lane or ahead of the BMW sedan in the left passing lane.

12. Immediately after clearing the front bumper of the lead Border Patrol transport van, the black BMW sedan (bearing Michigan license plate ECP 7319), abruptly cut in front of the Border Patrol vehicle, without signaling,

and rapidly decreased in speed, forcing the driver of the transport van to firmly apply the brakes to avoid a collision. The driver of the trailing Border Patrol Ford Explorer was also forced to quickly apply heavy brake pressure to avoid a collision with the Border Patrol transport van.

13. The Border Patrol Agents observed no debris in the roadway, adverse weather conditions, nearby offramps, or heavy traffic to cause the driver of the black BMW sedan to change lanes and brake suddenly in front of the Border Patrol transport van.

14. The BMW driver then stuck his hand out of the sunroof of his vehicle and extended his middle finger at the Border Patrol transport van. The BMW driver then increased his speed, returned to the left passing lane, and sped away from the Border Patrol service vehicles.

15. The Border Patrol Agent driving the transport van continued to maintain speed around 70 miles per hour and next observed the BMW driver decreasing speed in the left passing lane. Once the distance had closed between the two vehicles, the BMW driver abruptly cut into the center lane in front of the Border Patrol transport van without signaling. The BMW driver then aggressively applied the brakes again, forcing the Border Patrol Agent to quickly apply his brakes to avoid another collision. Due to the sudden braking, the immigrant detainees slammed against the interior walls in the back of the van. The Border Patrol Agents then observed the BMW driver accelerate and continue driving on westbound I-96.

16. Due to policy and to protect the safety of the immigrant detainees, the Border Patrol Agents could not attempt an enforcement encounter with the BMW driver. The Border Patrol Agent in the passenger seat of the transport van captured a photograph of the BMW license plate and called 911 to request assistance from local law enforcement. The Border Patrol Agent in the passenger seat of the trailing Ford Explorer also called 911 around the same time.

17. The Border Patrol Agents then observed the BMW driver merge onto southbound US-23. The Border Patrol Agents merged onto northbound US-23 towards their destination.

18. After merging onto northbound US-23, Border Patrol Agents stopped at the first available offramp to check on the well-being of the immigrant detainees.

19. Following this incident, federal law enforcement performed records checks on the BMW's license plate, and learned that the BMW was registered to Jacob Nathaniel LEN. The Border Patrol Agents positively identified LEN's driver's license photograph as the BMW driver from their highway encounter.

20. On July 30, 2025, Federal agents interviewed LEN outside of the residence listed on his driver's license. During this conversation, LEN confirmed he drove a black BMW sedan, and that the vehicle was currently parked in his garage. When asked if he drove his BMW erratically in the presence of Border Patrol vehicles a few weeks prior, LEN confirmed he was driving on I-96 that day and that he "flicked off" the vehicles. LEN first denied that he "brake checked" the Border Patrol transport van but later admitted that brake checking the vehicles could have hurt the occupants inside.

## **CONCLUSION**

21. Based on the above information, there is probable cause to believe that Jacob Nathaniel LEN did forcibly resist, oppose, impede, intimidate, or interfere with any person designated in Title 18, United States Code, Section 1114, that is, United States Border Patrol Agents, who were engaged in official duties, using a dangerous weapon, his BMW sedan, all in violation of Title 18, United States Code, Sections 111(a)(1) and (b).

_____
Nathaniel Y. Han, Special Agent
Federal Bureau of Investigation

Sworn to before me and signed in my presence and/or by reliable electronic means.

_____
Honorable David R. Grand
United States Magistrate Judge

Date: August 1, 2025